In re GRADE-CROSSING COM'RS OF CITY OF BUFFALO (two cases).

(Supreme Court, Appellate Division, Third Department. June 2, 1896.)

EMINENT DOMAIN — TAKING LAND FOR STREET PURPOSES — CONSEQUENTIAL DAMAGES.

    Laws 1888, c. 345, § 12, as amended by Laws 1890, c. 255, provides that if the grade-crossing commissioners of the city of Buffalo decide that it is necessary to change the grade of a street, and that property may be injured thereby, or that land shall be taken incident to the change of grade for widening streets, they may apply to the supreme court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of land taken or which may be injured, and

that, after the compensation has been awarded and the amount thereof paid, then all claims and damages to the property shall be extinguished. *Held*, that such statute does not affect the existing rights of property owners, under the city charter (Laws 1891, c. 105, § 406), where part of a lot is taken to widen a street, to compensation for the damage to the residue of the lot; nor does it render necessary a decision by the commissioners that the property will be injured in order to entitle the owner to recover for such injury, or require the owner to institute a separate action or proceeding therefor; but the entire amount of compensation to which he is entitled, both for land taken and for injury to land not taken, should be awarded in the proceeding by the commissioners. Parker and Merwin, JJ., dissenting.

Application by the grade-crossing commissioners of the city of Buffalo for the appointment of commissioners to ascertain the compensation to be paid to the owners of, and parties interested in, certain lands in the city of Buffalo proposed to be taken by the city of Buffalo, and claimed to be owned by Jennie Wells, A. Judson Wells, and others. From an order confirming the report of the commissioners, the property owners appeal. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Spencer Clinton, for appellants.

McMillan, Gluck, Pooley & Depew (Daniel H. McMillan, of counsel), for New York Cent. & H. R. R. Co.

Marcy & Close (Emory P. Close, of counsel), for Jennie Wells and A. Judson Wells.

Shire & Jellinck, for H. E. & H. H. Voght.

Laughlin, Ewell & Houpt (John Laughlin, of counsel), for J. E. and Caroline Ewell.

HERRICK, J. This is an appeal from an order of the supreme court confirming the report of the commissioners appointed, upon the application of the grade-crossing commissioners of the city of Buffalo, to assess damages for the taking of land under section 12 of chapter 345 of the Laws of 1888, as amended by chapter 255 of the Laws of 1890, and chapter 353 of the Laws of 1892. In pursuance of their duties, the grade-crossing commissioners deemed it necessary to take Michigan street, in the city of Buffalo, over the railroad tracks which crossed it; and in order to do so it became necessary to build a long approach in such street, on either side of the tracks, in order to get up to the level of the bridge to be built across them. For that purpose they determined to widen Michigan street where such approach was to be built, and to take a strip of land 31 feet in width on each side of the street, from the adjacent owners, the appellants in this case. They also propose to construct in the middle of Michigan street, thus widened, and opposite to the appellants' premises, a solid structure, with perpendicular walls of masonry filled in with earth, as an approach to such crossing; such structure to be 56 feet in width, and of the height of 13 feet and upward, opposite the whole of appellants' premises. That will leave a space 33 feet in width between such structure and the land of the appellants, after 31 feet has been taken from them.

Section 12 of the act under which such grade-crossing commissioners acted provides as follows:

"If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them, that any street shall be closed or discontinued, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, or that any land shall be taken incident to the changes of the grade of any street, or to widen any street, or in the event that the commission shall undertake the work on the failure of the company or companies to do so, the commissioners, by their chairman, may apply to a special term of the supreme court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken, or which may be injured."

Pursuant to this section the grade-crossing commissioners applied for the appointment of commissioners, and a commission of three was thereupon appointed by the court. The order for their appointment does not appear in the record, so that we do not know its exact terms, but assume that it follows the request of the petitioners. Upon the hearing before the commissioners, proof was made as to the value of the strip of land, 31 feet in width, which it is proposed to take from the appellants. In addition to such value, the owners offered to show the diminished value of the remainder of the premises by reason of the structure so proposed to be erected in the street, and offered to show that the remainder of the land, "after taking the thirty-one feet for the proposed improvements herein, will be greatly damaged on account of the structure proposed to be put in Michigan street under and in pursuance of the grade-crossing act and plan." The commissioners excluded all evidence as to such diminished value, and stated "that in making their awards herein they would exclude from consideration the effect of such proposed improvement or structure as bearing upon the diminished value of the remainder of said premises." Their ruling seems to have been made upon the theory that the improvement in question was but a change of the grade of the street, and that for such change of grade no damages can be awarded against the city, or recovery be had by the property owners. The decision was probably made, as it has been attempted to be supported upon this appeal, in reliance upon the cases of Conklin v. Railway Co., 102 N. Y. 107, 6 N. E. 663; Ottenot v. Railroad Co., 119 N. Y. 603, 23 N. E. 169; and Rauenstein v. Railway Co., 136 N. Y. 528, 32 N. E. 1047. I recognize the full force and effect of those decisions, and also that compensation for merely a change of grade cannot be obtained by an abutting owner, except by provision of some special statute. Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821. But I do not think those cases, nor that principle of law, are controlling in this case. The cases referred to were cases brought against railroad companies to recover damages for changing grades, and it was held that the railroad companies were acting by authority of, and in place of, the municipal corporation, and, as at common law the municipality was not liable in damages for a change of grade, the railroad company was not; and in the Ottenot Case the judges who concurred in the decision gave as the

principal reason for such concurrence the fact that the plaintiff had another remedy, under the charter of the city. The remedy under the city charter provided for compensation, not by the city, but by the property benefited by the change. This case presents itself to the court, it seems to me, in an entirely different aspect from that of any of those cases. Those were actions brought by persons who claimed to be damaged by what the court held to be simply a change of grade. This is a special proceeding to take from the appellants their property for the purposes of a public improvement which is not merely a change of grade, but for widening a street, and making a general public improvement in which the whole city of Buffalo is interested; and the questions presented are, shall the appellants receive all the compensation for all the injury they sustain by reason of such improvement in this one proceeding? or must they be driven to another proceeding, under the charter of Buffalo, to recover part of such compensation? or does the statute under which these proceedings are taken bar them from recovering, as a part of their damages for taking their property, any compensation for a change of grade? In determining those questions, we must necessarily take into consideration the nature and purpose of the proceedings, and the law under which they are conducted.

The city of Buffalo is a great railroad center, many lines of railroad entering the city through its public streets. The number of roads, and the number of streets through which they run and which they intersect, are a continual menace to the lives and safety of the citizens, and necessarily a source of great annoyance and expense to the railroads. Under laws existing before the passage of the grade-crossing law, railroad corporations could obtain, and had obtained, the right of passage through the city, and changed the grade of streets to insure the convenience and safety of the traveling public, as appears from the Ottenot Case, supra. And under the charter of the city a property owner could, in a proper case, obtain compensation for a change of grade. Section 17, tit. 9, c. 519, Laws 1870. Some of the railroad companies availed themselves of the provisions of the then-existing laws to insure safety at street crossings, as appears from the cases referred to, to which a number of others might be added, but the relief thus afforded was totally inadequate. To remedy the evil, it was necessary that there should be some concert of action, and provision made whereby all the railroad companies could be made to co-operate with the city. As a means of providing such remedy, the present law (being chapter 345 of the Laws of 1888, as amended by chapter 255 of the Laws of 1890 and chapter 353 of the Laws of 1892, commonly called the "Grade-Crossing Act") was enacted. The first section of the original law appointed commissioners, who were authorized to enter into contracts from time to time, in behalf of the city of Buffalo, with any railroad company or companies, "for the relief of the city from the obstruction of the streets of the city of Buffalo by roads crossing the same at grade, upon plans adopted, or to be adopted by said commissioners, as hereinafter provided." The law provides for the adoption of general plans, and also provides for an ap-

portionment of the expenses of such improvements between the rail-road companies and the city at large in proportion to be determined by the commissioners; and a part of the expenses to be so apportioned are the damages that may be awarded under section 12 of the act. Under the provisions of the act, streets may be widened, property taken, and grades changed, and it provides for the appointment of commissions to award compensation for property taken or injured. It is apparent that it was the intention to confine all claims for injuries caused by such improvements to the proceeding taken pursuant to such act; for it provides that after the compensation has been awarded, and the amount thereof paid or deposited by the city for the benefit of those entitled thereto, "the fee of the lands sought to be taken shall vest in the city, and all claims for damages to the property claimed to be injured shall be extinguished." Section 12. For the purpose it was intended to accomplish, it seems to me, this act must be held to supersede all pre-existing laws as to manner of procedure, and the forum in which it is to be conducted. And the changes made under it must be regarded as public improvements for the general benefit of the whole city, otherwise there would be no propriety, even if there would be power,—which I doubt,—to make the expense of such improvements, or any part thereof, a general charge upon the city.

With this general statement of the object of the statute, let us examine the question here presented. For the purpose of affording the relief sought, the commissioners adopted a plan which required the widening of Michigan street. That required the physical taking and appropriation of a portion of appellants' property, and the erection in front of the remainder, and in the middle of the street, of the roadway or structure heretofore described. The commissioners of appraisal were required to award compensation for the land taken. What is the measure of that compensation? It is contended on the part of the respondents that, under the literal reading of the statute, no compensation can be awarded for mere injury to the premises, unless the grade-crossing commissioners decide that, in carrying out their plans, "property may be injured," and apply for the appointment of commissioners to ascertain the compensation to be paid by reason of such injury, and that in this case, the grade-crossing commissioners not having decided that any injury would result to the appellants' property, nor asked to have any commission appointed to ascertain the compensation to be paid for any injury to their property, the injury that may result to the remainder of the appellants' property, or the diminished value thereof by reason of the proposed improvement, cannot be taken into consideration in these proceedings. Under the decision in the Story Case, 90 N. Y. 122, and the cases that followed it, I have very serious doubts whether the right to compensation for injury to property can be left to the determination of any such tribunal as the grade-crossing commissioners. Anything that affects or limits the free use and enjoyment of one's property, or of the easements or appurtenances thereto, is a deprivation or taking of property, within the meaning of the constitution; and he has the right to

have a constitutional tribunal pass upon the question as to whether he has so been deprived of it, and, if so, what compensation he is entitled to therefor. But, assuming that the grade-crossing commissioners are properly vested with that power, still I think the interpretation thus sought to be placed upon the statute is too narrow. The statute provides for the decision of the commissioners upon several matters. If they decide "that any street shall be closed or discontinued, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation," that is the case of injury to property, but when there is no actual, physical taking or appropriation thereof. Then there is the second class of cases, where there is an actual, physical taking and appropriation of the soil itself, as follows: "Or that any land shall be taken incident to the changes of the grade of any street, or to widen any street." The commissioners have decided in this case "that it is necessary, for the purpose of carrying out said plan adopted by them, that the lands hereinafter described [appellants' property] shall be taken to widen Michigan street." And they applied for a commission "to ascertain the just compensation to be paid to the owners and parties interested in the land, for taking the same." Having decided to appropriate the land for the purpose of widening the street, the compensation therefor must be determined as in other cases of the appropriation of lands for public purposes. They cannot by any action or nonaction of theirs, change any rule of law, or eliminate from the consideration of the commissioners of appraisal any element of damage that should otherwise be taken into consideration. "Generally, in taking land, the rule may be said to be to pay the full value of the land taken, at its market price, and no deductions from that value for any purpose whatever. Then, as to the land remaining, the question has been, to some extent, mooted, whether the company should pay for the injury caused to such land by the mere taking of the other property, or whether, in case the proposed use of the property taken would depreciate the value of that which was not taken, such proposed use could be regarded, and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. I think the latter is the true rule." Bohm v. Railway Co., 129 N. Y. 576–585, 29 N. E. 802. Just compensation for land taken is—First, the full value of the part taken; and, second, a fair and adequate compensation for all injuries sustained by the residue by reason of the changed condition, and the erection of the proposed construction. Newman v. Railway Co., 118 N. Y. 618, 23 N. E. 901. "The true rule—the only rule which will do equal justice to all parties—is to determine what will be the effect of the proposed change upon the market value of the property. The proper inquiry is, what is it now fairly worth in the market, and what will it be worth after the improvement has been made?" Railroad Co. v. Lee, 13 Barb. 169, approved in Henderson v. Railroad Co., 78 N. Y. 423–433.

It seems to me that the proposed plan of improvement must be considered as a whole, and the erection of the structure in the street as a part or incident of it; and if such improvement, or any part of it, will diminish the value of appellants' remaining property, then that fact should be taken into consideration by the commissioners. It must be borne in mind that this is not an action or proceeding to secure damages or compensation for a mere change of grade, but that it is a proceeding to take from the appellants their property, and that one of the items of damage suffered by them is the proposed change in the street, which we will assume to be a change of grade. Under the law as it has existed in the city of Buffalo since 1870, at least, they are entitled to compensation when they have suffered damages from a change of grade, and there is nothing in the grade-crossing act from which we can infer that it was intended to take any existing rights. Furthermore, after the passage of the grade-crossing act the same provisions as to compensating property owners for damages sustained by change of grade was placed in the revised charter of Buffalo (section 406, c. 105, Laws 1891). So that at the time of these proceedings the statute gave property owners a right to compensation for injury to their property sustained by change of grade. But it is said that such compensation cannot be obtained in these proceedings; that it must be sought under the charter of the city, by the proceedings therein provided for. I cannot assent to that proposition, for several reasons: First. In taking land for public streets, as in this case, one of the necessary elements of damage is that which may result from a change of grade. One of the reasons given why damages will not be allowed for a mere change of grade, unless permitted by express statute, is that, if the land for the street "became such by dedication, compensation for the easement was expressly waived. If taken by eminent domain, the compensation paid covered all the damages sustained, among which were necessarily embraced such as might flow from a change of grade required for the public use or convenience." Conklin v. Railway Co., 102 N. Y. 107–111, 6 N. E. 663, 665, approved in Rauenstein v. Railway Co., 136 N. Y. 528–534, 32 N. E. 1047. It does not appear whether Michigan street became such by dedication, or proceeding by eminent domain. In either event it does not seem to me that the appellants are excluded from compensation. I do not think the donation of a portion of appellants' lots for street purposes can be held to be a waiver of any damages resulting from the future taking of a large portion of what remained of their lots after such dedication. Nor, if it was taken under proceedings by eminent domain, do I think it can be held that in that proceeding damages were awarded that would embrace any damages that might result to the remainder of the lots after additional portions thereof should be taken. In other words, the taking of portions of the present lots is to be considered as if no part of them had ever before been either given or taken away for public purposes; and therefore change of grade, or a possible change of grade, is, under the cases above referred to, a proper—

indeed, a necessary—element of damage to be taken into consideration. Second. That the law under which these proceedings are taken was intended to afford the exclusive remedy for all damages sustained; section 12 providing, as heretofore stated, that, upon payment or deposit being made of the compensation awarded, "the fee of the lands sought to be taken shall vest in the city and all claims for damages to the property claimed to be injured shall be extinguished." Third. That if compensation was to be made for damages caused by this improvement, under the provisions of the charter of Buffalo for cases of change of grade, it would be in conflict with the spirit and intention of the grade-crossing act. By that act it was intended, as we have heretofore seen, to apportion the expense of the improvement between the railroads and the city. Under the charter the damages awarded for a change of grade must be assessed upon the real estate benefited. Laws 1891, c. 105, § 406. If damages, then, should be awarded for the change of grade, under the charter, they would be assessed, not upon the whole city, but upon the real estate held to be especially benefited by the change of grade. The general benefit derived by the whole city could not be taken into consideration, and the railroad companies would not necessarily contribute to pay any portion of the expense.

The order confirming the report of the commission should therefore be reversed, and the matter remitted to new commissioners to be appointed by the court, with costs and disbursements of this appeal to the appellants.

LANDON, J. (concurring). Construed literally, the first paragraph of section 12, namely: "If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them, that any street shall be closed or discontinued, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, or that any land shall be taken incident to the changes of the grade of any street, or to widen any street, or in the event that the commission shall undertake the work on the failure of the company or companies to do so, the commissioners, by their chairman, may apply to a special term of the supreme court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken, or which may be injured,"—seems to make the decision of the grade commissioners "that any property may be injured thereby, for which the owners or persons interested therein are lawfully entitled to compensation," a condition precedent to the right of the owner, a part of whose land is to be actually taken, and the remainder to be injured, to be awarded any compensation for such injury by the commissioners of appraisal, and also a condition precedent to the right of the grade commissioners to apply to the supreme court for the appointment of commissioners to ascertain

"the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken, or which may be injured," and equally a condition precedent to the right of the commissioners of appraisal to ascertain such compensation. I think the literal construction should not prevail, and thus defeat what we conceive to be the true intent and meaning of the act. It will be seen that this section, by its own terms, recognizes the fact that, in carrying out the grade-crossing scheme authorized by the act, lands may be injured as well as taken, and that compensation should be made for such injury. The charter of the city of Buffalo (chapter 105, Laws 1891, § 406) provides, "When the city shall alter the recorded grade of any street or alley, the owner of any house or lot fronting thereon may, within one year thereafter, claim damages by reason of such alteration"; and the ascertainment of such damages is committed to the board of assessors. Reading the acts together, it becomes plainer that it is the statutory right of the owner of lands fronting upon the street, whose recorded grade is changed, to claim and be awarded damages for the injury done to such lands, though none be taken. Therefore cases which deny the owner's right to damages in the absence of a statutory declaration of that right do not embarrass the question of the just compensation which these appellants may be entitled to. Folmsbee v. City of Amsterdam, 142 N. Y. 122, 36 N. E. 821. It may be remarked that this rampart of stone wall and earth, and the injury it causes to the appellant's premises, likens the case to that of Reining v. Railway Co., 128 N. Y. 157, 28 N. E. 640, in which the owner was permitted to recover damages of the railroad company, rather than to the cases cited by PARKER, P. J., in which the remedy was denied because the simple and ordinary change of the grade of the street was in no just sense the taking of the abutting owner's private property,—a doctrine, it may be remarked in passing, as to which judicial opinion is not harmonious, and from which legislative opinion dissents, as the act under consideration and numerous others attest. A telegraph pole may not be erected by the side of a country highway without compensation to the adjoining owner, whose fee extends to the center of the way. Eels v. Telegraph Co., 143 N. Y. 133, 38 N. E. 202. It is not strange, therefore, that the legislature here provided that compensation should be made for the injury to be done by this erection.

If the injured owners cannot in this proceeding obtain compensation for the injury to be done to the remnant of their lands, they cannot obtain it at all. Another provision of section 12 of the grade-crossing act declares that upon payment or deposit of the amount of the award, as specified in the act, "all claims for damages to the property claimed to be injured shall be extinguished." It does not say damages for the property taken, and thus suggest recourse to the assessors under the charter, or to some other commission, or to an action at law, but it covers "all claims for damages to the property claimed to be injured." In respect to land injured, none of which is taken, if the grade commissioners fail to include the owner thereof in the condemnation proceedings, such owner ob-

viously may, without prejudice, seek his day in court under the charter, or otherwise; but, in respect to the owner made a party to the condemnation proceeding, the statute informs him that all his claims for damages to the property claimed to be injured are to be extinguished in that proceeding. The language is comprehensive, and covers the claims here made by the owners, and rejected by the commissioners. It should not be overlooked that this clause is another statutory recognition of the owner's right to damages for the remnant of lands injured, though not taken. To construe this act to mean that the right of the owner of lands injured by taking part, but not the whole, to just compensation for the injury, depends upon the grade commissioners first deciding that the property may be injured by the execution of the grade-crossing scheme, and also that the owner is lawfully entitled to compensation therefor, is to imperil the validity of the act upon constitutional grounds; for, if the commissioners must so decide before the injured landowner can acquire his right to compensation, then the grade commissioners can, by an adverse decision, or failing to decide at all, foreclose that right, and this, too, without giving the owner any opportunity to be heard in respect to it. There is no provision in the grade-crossing act giving to the owner any opportunity to be heard upon that question before the grade commissioners. And, if there were, its validity would be doubtful, since section 7 of article 1 of the constitution provides that, "when private property shall be taken for any public use, the compensation to be made therefor * * * shall be ascertained by * * * not less than three commissioners appointed by a court of record,"—not by the legislature. If it be said that the constitution does not apply to land not taken, but only injured, the answer is that the statutory right of the owner to compensation for injuries is "private property," and thus within the constitutional protection. We need not impute to the legislature any intention to take from the landowner his private property without just compensation, or to deprive him of his property without due process of law, or to vest the determination of the question of fact whether his property has been injured, and whether he is lawfully entitled to compensation therefor, in commissioners other than those whom the constitution authorizes to determine it as incident to their jurisdiction to award just compensation, if by a reasonable construction of the act these objections can be avoided, and the act be found to harmonize with the intent of the legislature, and with the constitution. A careful reading of the first paragraph of section 12, first above quoted, in the light of the principles stated, will show that the matters which the grade commissioners are to decide as preliminary to their application to the special term for the appointment of commissioners of appraisal, are (1) "that it is necessary for the purpose of carrying out any plan * * * adopted by them that any street shall be closed or discontinued, or that the grade of any street * * * shall be changed"; and (2) either that some land will be injured thereby, or be taken therefor. It is manifest that the land to be injured may include land, no part of which is to be taken, and as to such

land the grade commissioners may or may not institute the condemnation proceedings authorized by the act. If they do not institute them, the owner, as is shown above, may seek his day in court elsewhere. But as to land to be taken the condemnation proceedings must be instituted. But when part of a lot is to be taken, and a part left, it is not for the grade commissioners to decide whether the part to be left is to be injured or not. Upon that question the owner is entitled to be heard before a constitutional tribunal, and cannot be foreclosed by the ex parte determination, or failure to determine, of the grade commissioners, whose function it is to devise and adopt the grade-crossing scheme, but not to adjudicate upon the rights of landowners. In the cases before us the grade commissioners did decide that it was necessary to take some of the land of these appellants. That was not a judicial decision. It was a mere statement of an indisputable fact. That fact being conceded, the judicial question results from it, whether the part of the owner's land remaining to him is or is not to be injured thereby. That question it is the right of the owner to have determined in a proper court, upon evidence, and no act or omission of the grade commissioners can deny to him the right. Jurisdiction of that question is incidental to the jurisdiction given to the commissioners appointed by the court to ascertain the compensation to be paid to the owner of the land, and the act itself declares that the compensation is to be "for the land proposed to be taken, or which may be injured." In construing the clause last quoted,—as, indeed, the whole of section 12,—it should be borne in mind that the government is stripping the individual of his property against his consent, and therefore the statute should be liberally construed in favor of the individual, in order to protect him against the unnecessary exactions of the government. No matter how narrow the act may be, in specifying the items of "private property" to be considered in fixing the compensation for it, the act must either be construed as intending to cover every item and element that needs consideration in fixing "just compensation," or the act itself must be condemned as unconstitutional (Menges v. City of Albany, 56 N. Y. 374), and we need not condemn it. The application of the grade commissioners for the appointment of constitutional commissioners follows the terms of the statute, and therefore must in like manner be construed; that is, as embracing every item and element that needs consideration in fixing just compensation for the property taken. It follows that it was the duty of the commissioners of appraisal to consider the question of injury and consequent damages to the land not taken. It is apparent that that question cannot be properly considered and determined without taking into consideration the situation as it is, and as it will be when the plan adopted by the grade commissioners shall be executed. Just compensation is the constitutional measure of damages, and this the grade-commission act, properly construed, was intended to secure to the individual owner. He should not be deprived of it by any narrow or illiberal construction. The landowners, in effect, asked to have their damages appraised upon

the basis of the situation and value of the remnant of land left to them, as affected by the plan adopted by the grade commissioners, when carried out and completed. This was refused. The refusal was error. The owner should receive—First, the full value of the land taken; second, where a part only is taken, a fair and adequate compensation for all injury to the residue sustained, or to be sustained, by the construction and effect of the improvement upon it. Henderson v. Railroad Co., 78 N. Y. 423; Newman v. Railway Co., 118 N. Y. 618, 23 N. E. 901.

In view of the conclusion to which we have arrived, the various questions as to the amount of costs need not now be passed upon. The order confirming the report of the commissioners should be reversed, and the matter remitted to new commissioners, to be appointed by the court, with costs to the property owners, appellants.

HERRICK and PUTNAM, JJ., concur.

PARKER, P. J. (dissenting). This is an appeal from an order of the supreme court made upon the 9th day of July, 1895, and entered in Erie county September 6, 1895, confirming the report of commissioners appointed, upon the application of the grade commissioners of the city of Buffalo, to assess damages for the taking of land under section 12 of chapter 345 of the Laws of 1888, and the amendments subsequent thereto. Such grade commissioners were appointed by the act above referred to for the purpose of relieving the city of Buffalo from the burden of the grade crossings which the numerous railroad companies centering in that city had imposed upon its streets. They are given full power to contract for the city with such companies concerning any changes and work necessary to be done in carrying out the plans for relief, and to agree with any company as to what proportion of the expense shall be borne by the company, and what part shall be assumed by the city. They are given the power to carry any street over or under the railroad crossing it, and to that end they are authorized to change the grade of, and to widen, the street which they propose to so change. In short, they are given very broad powers to lay out a plan for improving such of the grade crossings in the city as they deem necessary, and to take such property and make such changes as they deem necessary to carry out their plan. In pursuance of their duties, they deemed it necessary to take Michigan street over the railroad tracks which crossed it, and in order to do so it became necessary to build a long approach in such street on either side of the tracks, in order to get up to the level of the bridge to be built across them. In order to do this they determined to widen Michigan street where such approach was to be built, and to take a strip of land 31 feet in width from the adjacent owners, who are appellants in this matter. Their plan also necessitated constructing in the middle of Michigan street, and opposite the appellants' premises, a solid structure, with perpendicular walls of masonry, and filled in with earth, as an approach, 56 feet in width, and of the height of 13 feet and upward, opposite the whole of

their premises. Such approach would be 36 feet distant from the lands left to the appellants after taking the 31 feet from them. Section 12 of such act, among other things, provides that:

"If the commissioners shall decide that it is necessary, for the purpose of carrying out any plan, * * * that any street shall be closed or discontinued, or that the grade of any street, or portion of any street or public ground, shall be changed, and that any property may be injured thereby, for which the owners, or persons interested therein, are lawfully entitled to compensation; or that any land shall be taken incident to the changes of the grade of any street, or to widen any street, * * * the commissioners by their chairman may apply to a special term of the supreme court for the appointment of three commissioners to ascertain the compensation therefor, to be paid to the owners," etc., "of the land, or parties interested in the land, proposed to be taken, or which may be injured. * * *"

Under this section, upon the application of the grade commissioners, a commission of three was appointed by the court. All parties duly appeared before it, and the facts of the proposed plan and change of grade, as above stated, were agreed to, and proof was made of the value of the strip of 31 feet of land so sought to be taken. The owners thereupon offered to show the diminished value of the remainder of the premises by reason of the structure so proposed to be erected in the street. The commission excluded all evidence on that question, and stated that it would not, in making its award, consider the effect which such structure would have upon the value of the remaining premises, nor allow any compensation for the same. Such ruling was made upon the theory that such structure was but a change of the grade of the street in that locality, and that, under the law as settled in this state, damages cannot be allowed against a city, to abutting owners, arising from a change in the grade of a street. The report of the commission was affirmed at special term, and from such order this appeal is taken.

In the cases of Conklin v. Railway Co., 102 N. Y. 107, 6 N. E. 663; Ottenot v. Railway Co., 119 N. Y. 603, 23 N. E. 169; and Rauenstein v. Railway Co., 136 N. Y. 528, 32 N. E. 1047,—the question arose as to whether, when the grade of a highway or street had to be raised to take it over a railroad, the abutting owners could recover damages for the depreciation in the value of their premises caused thereby. By such cases it seems to be entirely settled that damages so suffered cannot be recovered against either the railway company whose road renders the change of grade necessary, or the city or town at whose direction the change is made. Such cases also hold that a structure built in the middle of the street, similar in all respects to the one in question, is to be considered as a mere change of grade. In the Ottenot Case, more fully reported in 23 N. E. 169, and in the Rauenstein Case, above cited, the structure under consideration was practically like the one before us. However harsh in its operation this rule may seem to be, we are controlled by it; and these appellants have no relief for the injury of which they complain, unless it is to be found in some special statute affecting their case. See, also, Folmsbee v. City of Amsterdam, 142 N. Y. 122, 36 N. E. 821. There is no provision in section 12, above referred to, allowing the abutting owners to apply for a com-

mission to assess their damages arising from any proceeding which the grade commissioners may take. Under no circumstances can they, on their own motion, procure an assessment of such damages. Unless the commissioners institute such proceeding, the owners are left to their remedy by action. And nowhere in the section is there any provision affecting the measure of damages to be allowed in such an action. The section, however, does provide that if the grade commissioners shall decide that it is necessary for the purpose of carrying out their plan that the grade of any street, or portion thereof, shall be changed, and that any property may be injured thereby, for which the owners or persons interested therein are lawfully entitled to compensation, they may apply for a commission to ascertain the compensation to be paid the owners therefor. It also provides that if they shall decide to take any land as incident to a change of grade, or to widen any street, they may apply for a commission to ascertain the compensation to be paid to the owners or persons interested in the lands so proposed to be taken. The right, therefore, to compensation tor injury caused by a change of grade, is given by this section only in the event that the commissioners so decide, and institute a proceeding by which it can be ascertained. In the event that they omit to do so, no relief whatever is given by this statute to the owners for such injury. The damages sustained by the taking of land by the commissioners is not made to depend upon their decision that "the owners are injured thereby," or that they "are lawfully entitled to compensation therefor." Upon the mere decision that they need the land, they are to procure the appointment of a commission to ascertain the just compensation to be paid "for taking the same"; but, as to the compensation for a change of grade, it is all made to depend upon their decision that the owners have sustained an injury thereby. Although, at the first reading of this section, 1 thought otherwise, a careful study of its language convinces me that no other or greater rights are given to abutting owners for injuries sustained by mere change of grade than as above stated. Nor, upon consideration, do I see why any greater rights should be given by it. It is the settled law of the state, affecting every citizen alike, that he holds his land abutting upon a street subject to the right of the public authorities to change its grade in such manner as they shall deem best for the public good. "The change of grade upon a highway invades no private right." Conklin v. Railway Co., 102 N. Y. 111, 6 N. E. 665. And therefore in every street in the city of Buffalo the city authorities have the right, except so far as it is affected by section 406 of its revised charter of 1891, to change the grade without making compensation to the abutting owners therefor. Why, then, should we expect a different rule in favor of those who happen to be affected by the improvements carried on under the provisions of this statute?

In the case before us the grade commissioners have not made application for a commission to ascertain the compensation to be paid to the abutting owners for the change of the grade of Michigan street. Nothing in the record indicates that they have ever

decided that the change of grade in such street will injure any of the parties before us, or that, any of them are entitled to compensation therefor. Their petition merely avers that they propose to widen Michigan street, and that the lands therein described are necessary for that purpose. It then describes the strip of 31 feet in width, sets forth the interest which these appellants and others have therein, and asks for the appointment of three commissioners to ascertain and report the just compensation to be paid to the owners and persons interested in such lands for taking the same, to the end that the city of Buffalo may acquire the fee therein. Plainly, this is but a proceeding for the taking of land, and no provision of this statute allowing compensation for a change of grade is applicable to it. It is a case where the measure of damages usually applicable in condemnation proceedings for the taking of land should be applied. The land taken by this proceeding is to be converted into a street, at the same grade with the lands remaining. No structure is to be put upon it. The structure which it was offered to show would work a serious injury to the remaining premises was not claimed to be upon the land taken, but upon Michigan street itself; and the strip so taken is for the purpose of widening the street, and thus operating to the advantage of the premises left. The change of grade in Michigan street does not result from taking the land. It is not at all dependent upon it, and the damages flowing from such change cannot be said to be incident to such taking. Upon no principle, therefore, could the damages claimed by the appellants be allowed them, and the ruling of the commissioners was correct. The 406th section of the city's revised charter of 1891 allows any abutting owner, when the recorded grade of any street is changed by the city, to claim, within one year thereafter, the damages resulting therefrom, and a method is therein provided for their ascertainment and assessment. This remedy is still open to the appellants.. The change of grade in question is clearly one made by the city, and the fact that the grade commissioners have taken appellants' land to widen Michigan street, and that damages have been ascertained and paid "for such taking," does not seem in any way to be a bar to an application under the charter for damages caused by a change of grade in the same street, made by the same commissioners. The provisions of section 12 which allow the commissioners to take lands without paying for the damage caused by their changing the grade of a street opposite them do not conflict with the owners' right to apply to the city for such damages, under the provisions of its charter. Hence the power so given to the grade commissioners does not infringe upon a property right given to the abutting owners by the city charter. The right still remains to them in full force, and notwithstanding the provisions of this statute, and the enforcement of these proceedings against them as abutting owners, they stand, so far as compensation for a change of grade is concerned, upon a par with every other citizen of Buffalo. They have the same rights and the same remedies that every other owner has. For these reasons, I conclude that the rejection by the commission of the evi-

dence offered was correct, and that the court at special term properly confirmed its report.

As to the question of costs presented upon this appeal: Inasmuch as this court concludes that the order confirming the report of the commission must be reversed, it would be of no interest to discuss it in this opinion.

MERWIN, J., concurs.