---

(42 App. Div. 530.)

ROME, W. & O. R. CO. v. GLEASON et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. RAILROADS—LICENSE FOR RIGHT OF WAY.
Where defendant permitted a railroad to be built across his land with the understanding that he should be compensated, the railroad company cannot compel specific performance of the license without compensating him as agreed.

2. EMINENT DOMAIN—MEASURE OF DAMAGES.
Plaintiff became owner of a railroad which had been built over defendant's land on a trestle without compensating defendant for the land taken, and filled in the trestle, causing the water to accumulate on defendant's land. *Held*, that the true measure of damages in condemnation includes the consequent damages to defendant's other land as well as the value of the land actually taken.

Appeal from special term, Onondaga county.

Petition for condemnation of right of way by the Rome, Watertown & Ogdensburg Railroad Company against Orson C. Gleason and others. From a commissioner's report fixing the compensation, defendants appeal. Reversed.

In the year 1870 the Syracuse Northern Railroad Company built its road across a farm in the town of Clay, Onondaga county, N. Y., owned by the American Peat Company, which farm contained 753 acres of land. The road was originally constructed upon a wooden trestle, which ran diagonally across the farm for a distance of $65/100$ of a mile, and the strip of land thus occupied contained 6.29 acres. As thus severed, there was left of the farm upon the easterly or upper side of the railroad $387\frac{1}{2}$ acres of land, and upon the westerly or lower side 355 acres; the farm buildings being upon that portion lying west of the trestle. In August, 1875, the property of the Syracuse Northern Railroad Company was sold to the Syracuse & Northern Railroad Company, and in October of the same year the latter corporation was consolidated with the plaintiff under the corporate name of the Rome, Watertown &

Ogdensburg Railroad Company, and this proceeding was initiated by the last-named corporation to condemn the land now occupied by it, the petition herein expressly conceding that such condemnation could be accomplished only upon condition that the petitioner pay to the defendants, who are the present owners of the land, such compensation as they are entitled to receive. When the plaintiff took possession of the land in question, it proceeded to improve and complete its roadbed thereon by filling the trestle with earth; and in course of time, and prior to the commencement of this proceeding, it had constructed in place of the trestle an earthen embankment from five to eight feet in height, which extended entirely across the farm. The effect of this permanent structure was to retain the surface water upon the premises, which formerly had found its way either into a stream known as "Mud Creek," or had flowed off in the direction of Seneca river. No answer was served by the defendants in this proceeding, but upon the trial before the commissioners appointed to appraise the value of the land taken much evidence was given by both the petitioner and the defendants relative to the value of the land actually taken, and bearing upon the question of consequential damages to the remaining portions of the farm. The commissioners determined that the land taken was worth $25 per acre, or $157.50 in the aggregate, and awarded the defendants that sum, but they declined to award any damage for injuries resulting to such portions of the land as were not actually taken. The award thus made was subsequently confirmed at special term, and from the order of confirmation this appeal is brought.

Argued before HARDIN, P. J., and ADAMS, SPRING, and NASH, JJ.

D. Raymond Cobb, for appellants.
Frank Hiscock, for respondent.

ADAMS, J. Upon the hearing before the commissioners some evidence was given on behalf of the petitioner which tended to show that the Syracuse Northern Railroad Company entered upon this tract of land, and constructed its road thereon, in pursuance of a parol gift or license from the owner; and it is argued that by reason thereof the petitioner is entitled to a specific performance of the gift by the donor or his successors in title under the rule of law laid down in the case of Lobdell v. Lobdell, 36 N. Y. 327, and other cognate cases. We do not, however, regard this position as tenable, inasmuch as the petitioner's principal witness upon this subject testified that the permission to cross the land in question was upon the understanding, as he supposed, that remuneration should be paid the owner of the land taken for that purpose. It is not pretended that any compensation ever was paid, and consequently the commissioners, in awarding the same, allowed what they determined to be the full value of the land taken. Such value was determined after a personal inspection by the commissioners, and the information thus obtained was largely supplemented by the evidence of various witnesses who were called to testify upon the subject. Under such circumstances the courts are loth to disturb the appraisal of commissioners, even though it may be made to appear that the amount awarded is to some extent inadequate, which is by no means the case in this instance. There remains, consequently, but a single question for our consideration upon this review, and that is whether or not the commissioners have adopted correct principles in making their award.

The commissioners accompanied their report in this proceeding with a brief memorandum, stating the reasons governing them in reaching the conclusion they did, in which memorandum they say:

"We are of the opinion that the proposed use of the land taken by the railroad company, as the trestle and structure was originally constructed, did not damage the portion of the land not taken. The damage, if any, to the remainder, has been occasioned by the independent acts of the company in filling in under the tracks so as to create an embankment. For such injury and damage we think the defendants have an independent cause of action, and that this commission cannot consider such acts in determining the amount of damages in this proceeding."

It may be assumed, for the purposes of this appeal, that the construction by the Northern Railroad Company of its track upon the trestle resulted in no appreciable injury to that portion of the land not actually taken, for the trestle did not deprive the owner of the right of access to his land upon either side thereof, nor did it have the effect to prevent the flow of surface water, and probably it did not injure the land for agricultural purposes; but when the open trestle was replaced by a solid embankment running across the entire farm a very different condition of affairs existed, and the evidence contained in the record before us will permit the finding that consequential damages to a considerable amount thereby resulted to the premises upon either side of the embankment, for which damages the language above quoted would seem to imply the commissioners would have awarded compensation to the defendants had they supposed they had the power so to do. We understand it to be now well settled in this state that the principle upon which compensation is to be made to the owner of lands taken for railroad purposes by proceedings under the general condemnation law is that such owner shall receive not only the value of the land actually taken, but likewise a fair and adequate compensation for all injury to the residue of his lands resulting from the construction and operation of the railroad. Newman v. Railway Co., 118 N. Y. 623, 23 N. E. 901; Bohm v. Same, 129 N. Y. 585, 29 N. E. 802; In re Grade Crossing Com'rs of City of Buffalo, 6 App. Div. 327, 40 N. Y. Supp. 520; Id., 17 App. Div. 54, 44 N. Y. Supp. 844. The reason for this rule is obvious, for it is just as much a taking of property, within the spirit of the constitution, to deprive the owner of land of its free use, or to diminish its value by the construction of an embankment, as it is to enter into physical possession and occupation thereof; and consequently, upon no other principle can the provision of the constitution forbidding the taking of private property for public purposes without just compensation be satisfied. In the case first above cited it was said that:

"The meaning of the expression 'just compensation' has not been limited to the value of the property actually taken, but has been held to include all consequential injuries which the landowner may sustain by reason of depreciation of value in the residue of the property by reason of the taking of a part, and the construction thereon of the public improvement. The rule affords full indemnity to the property owner, and leaves him in as good condition as he was before the construction of the road." Newman v. Railroad Co., 118 N. Y. 627, 23 N. E. 90.

Had this proceeding been instituted before the railroad company had entered upon the land in question, and had it been made to appear, either by the petition itself or by the evidence taken before the commissioners, that the plan of the petitioner contemplated the construction of a solid earthen embankment across the land of the defendants upon which to lay its tracks, the commissioners would undoubtedly have been required to take into account the probable consequences to the lands not taken by the erection of such a structure, and to have awarded the owners such reasonable damages as in their judgment would result therefrom. And, if this be so, we fail to see why, having erected such a structure before resorting to this proceeding, the same rule of damages should not be applied. As has already been stated, when this proceeding was instituted the trestle, as originally constructed, had been replaced by the embankment; and the petitioner, being in possession and occupation thereof, is availing itself of the provisions of the condemnation law (Code Civ. Proc. c. 23, tit. 1) to retain the premises of which it has taken possession, not for the purpose of erecting an open trestle thereon, but, as stated in its petition, "for part of the roadbed and railroad track of that branch of its road which runs from Syracuse to Ogdensburg as aforesaid, and by which it has for many years been occupied." Of course, the petitioner did not and could not expect to retain the possession thus acquired without making just and adequate compensation to the owners of the land for whatever damages they sustained by reason thereof, and the only question raised is the extent and nature of those damages. Nobody questions the right of the owners to the value of the land actually taken, and that, as we have seen, has been awarded to them; but within the rule to which we have adverted, should not the compensation awarded embrace damages which are consequential as well as those which are direct in their character? We are unable to see upon what theory this question can be answered in the negative, if the owner of land taken for public use is to receive that full, just, and adequate compensation which is contemplated by the fundamental law of the land. The rule which we think applicable to the present case has not only been clearly stated by the court of appeals and by this court in the cases above cited, but it is one which is universally recognized by text writers as an elementary principle of the law of eminent domain. By one such writer that rule is thus declared:

"What is to be considered just compensation should never be less than the loss the owner of the property has really sustained, but in the assessment should be included his damages present and prospective." 1 Harris, Dam. Corp. p. 40.

By another it is said that, in order to arrive at the true rule of value,

"The jury of award may consider the damage by reason of the lot or building being severed or disfigured on account of the taking of the strip and the use of it, and the effect of the proposed use of the strip upon the remainder of the lot; the fact that the improvement will separate a well, garden, or high-

way from the house, or change the grades of crossings to reach the parts separated, or make the crossings more inconvenient; or cut up the land inconveniently, so as to interfere with the watering of stock, or to interrupt the flow of surface water in its accustomed channels." Mills, Em. Dom. p. 166.

By still another it is said that:

"When the plan is given, the effect can be more accurately determined; and where compensation subsequent is granted, or condemnation takes place after entry, the tribunal of assessment has frequently before it a completed work, with all its effects in evidence." Rand. Em. Dom. § 265.

And in speaking of a case like this, where a railroad had been constructed through a farm, Lewis, Em. Dom., at section 481, says:

"It may make a great difference whether it [the railroad] is built at the natural grade, or in a deep cut, or on a high embankment or trestle. If the works have actually been constructed before the damages are assessed, it has been held proper to take into consideration the actual condition of the works as affecting the damages."

The rule as thus stated by these several writers seems to us an eminently proper one, and no adequate reason suggests itself to our mind why the owner of lands who has suffered consequential damages should be put to the annoyance and expense of an independent action to recover those damages when they may be easily ascertained and adjusted in a proceeding of this character. The views which we have thus expressed lead to the conclusion that the order appealed from should be reversed, and that the commissioners already appointed should be required to embrace in their report such consequential damages as the defendants have suffered, if any, by reason of the construction and maintenance of the petitioner's road across their farm in the manner it had been constructed, and as it existed at the time this proceeding was instituted.

Order reversed, and matter remitted to the same commissioners, to ascertain and report what, if any, consequential damages the property owners are entitled to, with costs of this appeal to the appellants. All concur.