(63 App. Div. 540.)

MYER v. ADAM et al., Grade-Crossing Commissioners.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. MANDAMUS—GRADE-CROSSING COMMISSIONERS—DAMAGES.

　　Grade-Crossing Act (chapter 255, Laws 1890) § 12, provides that, if the commissioners decide that it is necessary that the grade of any street shall be changed, and that any property may be injured thereby, for which the owners are entitled to compensation, the commissioners may apply to the supreme court for the appointment of commissioners to ascertain the compensation. *Held*, that mandamus would lie to compel the grade commissioners to hear testimony offered by the relator on the question whether damages were sustained by him by reason of a change of grade in a street, and determine whether they should not apply for the appointment of commissioners to assess such damages.

2. SAME—CONSTITUTIONAL LAW.

　　The right to compensation for injury to property cannot be left to the final determination of the grade-crossing commissioners without affecting the constitutional rights of the property owner under Const. art. 1, § 7, providing that compensation for private property taken for public use shall be ascertained by a jury of not less than three commissioners appointed by a court of record.

Appeal from trial term, Erie county.

Application by Viola W. Myer for a writ of mandamus against Robert B. Adam and others, as grade-crossing commissioners of the city of Buffalo. From a judgment and order granting the application, defendants appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Spencer Clinton, for appellants.

Adolph Rebadow, for respondent.

WILLIAMS, J. The judgment and order appealed from should be affirmed, with costs. The proceedings were commenced to obtain a mandamus compelling the defendants to hear and consider the testimony of such witnesses as the relator should produce before them on the question as to whether damages were sustained by the relator by reason of the change of the grade of Washington street, in the city of Buffalo, and thereafter determine whether they should not apply to the supreme court for the appointment of commissioners to assess such damages. Upon the issue raised by the alternative writ and return thereto, a trial was had before the court without a jury, and a judgment and order were granted directing that the peremptory writ issue. The trial court found that in 1896 the grade-crossing commissioners changed the grade of the street in front of the relator's premises, raising the surface of the same at the northerly boundary thereof 6 feet 11¾ inches, and at the southerly boundary thereof 6 feet 7⅜ inches; that the brick building on the premises, which encroached on the street from 2 to 2½ inches, was, in changing the grade of the street, demolished, and the tenant occupying the same was required to vacate, and paid no rent to the relator thereafter. February 2, 1897, the relator presented a petition to the defendants, as grade-crossing commissioners, asking to have commissioners appointed to appraise the damages to her property. The defendants viewed the property, and on the 2d day of March, 1897, denied her application. On the 7th of May, 1900, the relator renewed her request to the grade-crossing commissioners, and asked them to apply to the supreme court for the appointment of commissioners to appraise her damages, and requested the grade-crossing commissioners to hear the testimony of witnesses to be produced by the relator showing the damages alleged to have been suffered by her, but the grade-crossing commissioners refused to do this, and on the same day wholly denied relator's application. Upon these facts the court decided as matter of law that under the statute known as the "Grade-Crossing Act" (chapter 255, Laws 1890) the relator had the right to produce witnesses and such testimony as she should be advised for the purpose of showing damages had resulted from the change of grade of the street; and that it was the duty of defendants to hear such testimony as should be offered before deciding whether they would apply for the appointment of commissioners to appraise the relator's damage. Section 12 of the grade-crossing act provides:

"If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them,

that any street shall be closed or discontinued, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation, or that any land shall be taken incident to the changes of the grade of any street, or to widen any street, or in the event that the commission shall undertake the work on the failure of the company or companies to do so, the commissioners, by their chairman, may apply to a special term of the supreme court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken or which may be injured."

The trial court gave a liberal construction to this statute, but it is difficult to see how any other construction can be given to it without infringing upon the constitutional rights of the relator with reference to her property. The court did not find there was injury to the relator's property resulting from the change in the grade of the street, for which the relator was entitled to compensation, but from the facts which were found we may well assume there was such injury, or at least such a probability of injury, as to render it necessary to submit the question to commissioners appointed for the purpose of ascertaining what the damages were, if any. There could be no objection to the grade-crossing commissioners upon their own observation of the property and its surroundings deciding that the property might be injured by the change of grade, and thereupon applying to the court for the appointment of commissioners, without taking testimony. In that event no one could be injured. When the commissioners came to act, they would not be bound by the decision of the grade-crossing commissioners, but might conclude that no injury had been caused for which compensation should be awarded. In re Grade-Crossing Com'rs, 166 N. Y. 69, 59 N. E. 706. But, if it could be said that the grade-crossing commissioners had power to decide upon their observation that no injury to property was caused for which compensation could be awarded, and then refuse to apply for the appointment of commissioners to ascertain such compensation, refuse to investigate, or take evidence offered, and arbitrarily refuse to commence the proceeding, the property owner would be at the mercy of the grade-crossing commissioners, and would have no remedy whatever. Neither the city nor the railroad companies could be compelled to pay damages, except as the result of such proceeding, because neither the city nor the railroad companies caused the injury and damage. It was caused by the grade-crossing commissioners, over which the city and the railroad companies had no control; and the only way to secure damages—that is, compensation—for the injuries caused by the raising of the grade of the street would be through the proceedings provided for by the grade-crossing act. The intention of the legislature by the act was to provide the exclusive remedy for all damages sustained resulting from the acts of the grade-crossing commissioners thereunder. In re Grade-Crossing Com'rs of City of Buffalo, 6 App. Div. 336, 40 N. Y. Supp. 520. The right to compensation for injury to property cannot be left to the final and exclusive determination of such a tribunal as grade-crossing commissioners without affecting the constitutional rights of the property

owner. "Anything that affects or limits the free use and enjoyment
of one's property, or of the easements or appurtenances thereto,
is a deprivation or taking of property within the meaning of the
constitution, and the owner has the right to have a constitutional
tribunal pass upon the question as to whether he has been deprived
of it, and, if so, what compensation he is entitled to therefor."
Same case last cited, and cases there cited. The provision of the
constitution referred to is article 1, § 7:

"When private property shall be taken for any public use, the compensa-
tion to be made therefor, when such compensation is not made by the state,
shall be ascertained by a jury or by not less than three commissioners ap-
pointed by a court of record, as shall be prescribed by law."

We think the decision under this statute by the grade-crossing
commissioners (certainly when against the property owner) is not
final and conclusive upon the property owner, but is subject to re-
view, and that, as said by the learned trial justice:

"The power to decide, given by a statute, unless limited thereby, neces-
sarily carries with it the duty to investigate in the manner and by the
methods usually employed for ascertaining any fact or facts to be judicially
declared; also insure to the party or parties interested in such decision the
right to such a record, unless otherwise provided, as will enable him to re-
view such decision."

It will be observed that the question is not one as to the amount
of compensation, or whether there was, as a matter of fact, any
injury for which the relator was entitled to compensation, but, in
the language of the statute, the property may be injured, etc.

Our conclusion is that the judgment and order appealed from
should be affirmed, with costs. All concur.