(74 App. Div. 604.)

PEOPLE ex rel. MYER v. ADAM et al., Grade Crossing Com'rs.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. MUNICIPAL CORPORATIONS — GRADE CROSSING COMMISSIONERS — POWERS — CHANGE OF GRADE—DAMAGES—REVIEW

The decision on a hearing by the Buffalo grade crossing commissioners, authorized by Laws 1888, c. 345, § 12, to make application to the supreme court for the appointment of commissioners to determine the damages to an abutting property owner caused by the change of a grade, that the facts do not show sufficient damage to warrant such application, is subject to review by the court, even though the commissioners have not been guilty of a gross abuse of their powers.

McLennan, J., dissenting.

Certiorari by the people, on the relation of Viola W. Myer, against Robert B. Adam and others, as grade crossing commissioners of Buffalo, to review a decision refusing to apply for the appointment of commissioners to determine the damages caused by a change of grade. Decision reversed.

Argued before McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Adolph Rebadow, for relator.
Spencer Clinton, for grade crossing commissioners.

SPRING, J. The grade crossing act (chapter 345, Laws 1888, and several times amended) provided a detailed and extensive scheme "for relief of the city from the present obstruction of the streets of the city of Buffalo by railroads crossing the same at grade." The mode of procedure is mapped out in detail in the act, and the large expense to be incurred in the execution of the plan was to be borne conjointly by the railroad companies and the city. Section 12 of the act provides for the ascertainment of damages caused by carrying out the plan contemplated, and tentatively, at least, the power is vested in the commissioners appointed by the act to set in motion the procedure for their ascertainment. In carrying out the plan, a portion

of Washington street was appropriated in front of the premises of the relator in this proceeding, and the grade of the street was changed, under the direction of the commissioners, so that at the northerly boundary of her premises the street was elevated 6 feet 11¾ inches, and at the southerly boundary 6 feet 7⅜ inches. A brick building on the premises, which encroached on the street about 2 inches, was demolished, and the tenant who occupied the same was compelled to abandon the building. The relator requested the grade crossing commissioners to make application to the supreme court for the appointment of commissioners to ascertain the damages which she had sustained because of the change of grade and appropriation of the street. This the commissioners declined to do, and refused to hear any testimony upon the subject of the damages claimed to have been sustained by the relator. Proceedings were thereupon commenced by mandamus to compel the commissioners to hear and consider the testimony of her witnesses bearing upon the subject of whether she had sustained any damages by reason of the said change of grade, which resulted in favor of the relator. An appeal was taken from the judgment and order of the supreme court in favor of the relator to the appellate division of this department, which sustained the judgment and order (Myer v. Adam, 63 App. Div. 540, 71 N. Y. Supp. 707), and the decision of this court was affirmed in the court of appeals (169 N. Y. 605, 62 N. E. 1098).

Upon the hearing the facts stated appeared, and one competent witness was produced by the relator who testified that, in his opinion, damages had resulted from this change of grade. A witness on behalf of the defendants gave a contrary opinion, and the grade crossing commissioners have declined to apply to the court for any commissioners to ascertain the damages, and whether any in fact have been sustained. It is contended that this decision of the grade crossing commissioners is final, and that the authority is vested in them to determine whether damages in fact have been sustained, and, unless there is a gross abuse of that power, their decision cannot be disturbed on appeal. This involves the question as to whether the plan provided by the grade crossing act for the ascertainment of damages is the only remedy to which a person injured can resort for damages resulting from the execution of the act. For it would not be claimed that, if the grade crossing act vests the power absolutely in the grade crossing commissioners to determine whether any damages have resulted to an abutting property owner over the carrying out of the plan provided in the act, it would be constitutional, unless there is some other remedy, under the charter of the city of Buffalo or elsewhere, by which he might obtain a review and consideration of his rights.

The plan of the grade crossing act is peculiar to itself, and provides: the entire scheme under which the streets are appropriated and the grade changed at the will of the grade crossing commissioners; and the expense thereof is not charged upon the city wholly, but is to be apportioned between the municipality and the railroad companies affected by the improvement. Again, it is peculiar in that, even though property in the district in which any special change occurs

may be benefited thereby, there is no visiting the expenditures which result in such enhancement of value upon the premises benefited. It is only by virtue of the agreements entered into, pursuant to the act, between the grade crossing commissioners and the railroad companies, that this expense may be apportioned. If proceedings were instituted under the charter of the city, the damages would be primarily imposed upon the city; and there is no provision in the act whereby the municipality may exact contribution from the railroad companies, and the purposes of the act would consequently be frustrated if that proceeding was resorted to. The essence of the plan outlined by the act was this division of the burden, and in no other way can it be worked out, except by the agreements which are provided for and which form a part of its general scheme. It seems plain, therefore, that the only remedy for the ascertainment and apportionment of damages is to be found in the act itself, and that accords with the trend of the authorities.

When this case was before this court on the preceding appeal (63 App. Div. 540, 71 N. Y. Supp. 707), it was said in the opinion, at page 543, 63 App. Div., page 709, 71 N. Y. Supp.:

"But if it could be said that the grade crossing commissioners had power to decide, upon their observation, that no injury to property was caused for which compensation could be awarded, and then refuse to apply for the appointment of commissioners to ascertain such compensation, refuse to investigate or take evidence offered, and arbitrarily refuse to commence the proceeding, the property owner would be at the mercy of the grade crossing commissioners, and would have no remedy whatever. Neither the city nor the railroad company could be compelled to pay damages, except as the result of such proceeding, because neither the city nor the railroad companies caused the injury and damage. It was caused by the grade crossing commissioners, over which the city and the railroad companies had no control, and the only way to secure damages (that is, compensation for the injuries caused by the raising of the grade of the street) would be through the proceedings provided for by the grade crossing act. The intention of the legislature, by the act, was to provide the exclusive remedy for all damages sustained, resulting from the acts of the grade crossing commissioners thereunder."

Again, by the revised city charter of the city of Buffalo (section 406, c. 105, Laws 1891), where damages are awarded to an owner of land by reason of the alteration of the grade of a street, they are to be assessed "upon the real estate benefited by the alteration," which is not within the purpose of the act under consideration. Section 12 of the act provides that "if the commissioners shall decide that it is necessary" to change the grade of any street, "and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation * * * the commissioners by their chairman may apply to a special term of the supreme court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of, or parties interested in, the land proposed to be taken or which may be injured." While the language of this section, strictly construed, may be said to give the commissioners the absolute right to pass upon the question whether any damages have been sustained, yet we must assume that the legislature intended to keep within the limits of the constitu-

tion, in prescribing their functions and powers. The plan was an extensive one, requiring the expenditure of large sums of money, and was unique, but specific in the detailed formulation of its general design. The grade crossing commissioners were the executive board created by it, and as it was necessary to place somewhere the authority to carry out the purposes of the act, and to institute legal proceedings whenever essential, that power was intrusted to them. So far as that power extends to the subject of damages, it was intended to be preliminary in its scope. These commissioners are to investigate and ascertain whether there is any prima facie warrant upon which they may base their application to the court for the appointment of commissioners, as a constitutional tribunal to whom the actual determination of the subject is to be committed. The grade crossing commissioners could not be expected to apply for commissioners unless there were some facts—some investigation shown in their petition—to justify the court in entertaining the proceeding. But it was not expected that with these commissioners should rest the judicial determination upon a preliminary hearing of a lot owner's damages, or whether any in fact had been sustained by making the proposed improvement. This construction retains the act in its integrity, keeps within its scope exclusively all the damages which arise from its execution, and is not counter to any constitutional provision. The decision of the grade crossing commissioners should be reversed, with $50 costs and disbursements in favor of the relator.

Decision of the grade crossing commissioners reversed, with $50 costs and disbursements to the relator. All concur, except McLEN-NAN, J., who dissents in opinion.

McLENNAN, J. (dissenting). In the year 1895 the relator became, and ever since has been, the owner in fee of certain premises abutting on Washington street, in the city of Buffalo, N. Y. From the time the relator became the owner of said premises until about the month of April or May, 1896, the land was practically on a level with Washington street, which street furnished the only means of ingress or egress to the premises. In the month of April or May, 1896, under the power conferred by the grade crossing act, so called, and to carry out its purposes, the grade crossing commissioners raised the grade of Washington street in front of the relator's premises 6 feet 11⅝ inches at the northerly boundary, and about 6 feet 7⅜ inches at the southerly boundary. Thereafter, and about the month of May, 1900, the relator appeared before the grade crossing commissioners by her attorney, claiming that her premises had been damaged by reason of the change of the grade of Washington street, and requested the grade crossing commissioners to apply to the supreme court for the appointment of commissioners of appraisal to ascertain the compensation to be paid to her on account of such damage, or that such grade crossing commissioners give her a hearing, and permit her to introduce testimony for the purpose of showing that she had suffered damage by the change of the grade of such street. The grade crossing commissioners, after having personally viewed the premises, determined that no damage had been done thereto, and denied the re-

lator's application, and refused to hear or take evidence in respect to her claim. Thereafter, and on the 10th day of September, 1900, the relator procured to be issued an alternative writ of mandamus, directed to the grade crossing commissioners, to compel them to give the relator a hearing, and permit her to introduce testimony of witnesses to show that her property had been damaged by the change in the grade of Washington street. A return to such writ was filed, the issues raised thereby were tried, and a decision duly made. Judgment was entered thereon directing the immediate issue "of a peremptory writ of mandamus, directed * * * to the grade crossing commissioners, requiring them to hear and consider the testimony of such witnesses as the relator shall produce before them on the question of damages sustained by the relator by reason of the change of grade of Washington street, and thereafter to determine whether such commissioners shall or shall not apply to the supreme court for the appointment of commissioners to ascertain the alleged damages of the relator." From that judgment, which was duly entered in the office of the clerk of the county of Erie on the 4th day of March, 1901, an appeal was taken to the appellate division of the supreme court, Fourth department, where it was in all things affirmed. 63 App. Div. 540, 71 N. Y. Supp. 707, affirmed (court of appeals) in 169 N. Y. 605, 62 N. E. 1098. In accordance with the direction of said judgment, the grade crossing commissioners duly notified the relator that they would hear her in respect to her Washington street claim at their office in the city of Buffalo on the 11th day of February, 1902, at 9:30 a. m. of that day. Pursuant to such notice, the relator, by her attorney, appeared and made proof as to the character and situation of the premises both prior to and after the change of grade in Washington street, and called one witness who testified that, in his opinion, the property was thereby materially damaged. The commissioners also called one witness, who testified that, in his opinion, the property of the relator had not been damaged. The commissioners made a personal examination and inspection of the relator's premises, and, after the hearing was closed, they held and determined that the property owned by the relator was not damaged by the change of the grade of Washington street, or by the carrying out of the plans of the commissioners; and they refused to apply, or at least have not applied, to the supreme court for the appointment of commissioners of appraisal to assess such alleged damages. Thereafter this writ of certiorari was issued, directing the grade crossing commissioners to make return of all their proceedings in the premises, which they did by filing the petition of the relator, the writ of certiorari issued thereon, all the evidence given and proceedings had upon the hearing before them, and their decision and determination, all of which constitutes the record before us, and upon which we are asked to compel the grade crossing commissioners to make application to the supreme court for the appointment of three commissioners to ascertain the compensation to be paid to the relator for the damages she claims to have sustained on account of the change in the grade of Washington street.

It cannot be said that the decision or determination of the grade

crossing commissioners is contrary to or against the weight of the evidence, that it was not made in good faith, or that it does not represent their honest judgment. The brick building on the premises was torn down by the contractors who changed the grade of the street, but it is stipulated that it "encroached on Washington street about two inches at the northerly line, and about two and one-eighth inches at the southerly line, and that it thereby became necessary to remove that portion of said building which encroached upon said street line, and that thereby, solely on such account, said building was demolished, and not otherwise." Under that stipulation, certainly no damages can be predicated on account of the destruction of the building. It is further stipulated that the grade of Washington street was raised 6 feet 11⅝ inches at the northerly boundary of said premises, and 6 feet 7⅜ inches at the southerly boundary. The fact that the grade of the street was so changed, in and of itself, in no manner indicates that the property was thereby injured. On the contrary, such change of grade may have materially enhanced its value. So, again, it appears that the building which was demolished was occupied by a tenant, that he vacated the premises when the work upon the street commenced, and that since that time the premises have been vacant; but according to the stipulation the building was demolished because it encroached upon the street, and after having been demolished, of course, it could not be occupied, so that the fact that the premises were vacant does not necessarily entitle the relator to damages. None of these facts, in and of themselves, necessarily prove or tend to prove that the relator sustained any damage whatever because of the change of grade in the street. Whether or not damage was done depends upon all the circumstances and the testimony of the witnesses. One witness called by the relator as an expert testified that, in his opinion, the change in the grade of the street injured the property. Another expert witness, called by the commissioners, testified that, in his opinion, no injury was done to it; and, in addition, the commissioners themselves examined and inspected the premises, and by their decision declared, as did the witness called by them, that, in their judgment, no damage was done to the relator's property because of the change in the grade of Washington street. If, therefore, the commissioners were authorized to determine the question, we must hold their decision that the premises were not injured is final, as it is amply supported by the evidence.

Under section 2140 of the Code of Civil Procedure, only the following questions may be determined by the court upon this hearing: (1) Did the grade crossing commissioners have jurisdiction of the subject-matter of the determination under review? (2) Did they exercise their authority in the mode prescribed by law? (3) In making their determination, did they violate any rule of law, to the prejudice of the relator? (4) Was there any competent proof of all the facts necessary to authorize the making of the determination? (5) Was there, upon the evidence, such a preponderance of proof against the existence of any of the material facts that the verdict of the jury affirming the existence thereof would be set aside, by the court as against the weight of the evidence?

Having concluded, as above indicated, that there was competent proof of all the facts necessary to enable the commissioners to determine whether or not the premises of the relator were injured, and that their determination in that regard was not against the weight of the evidence, it only remains to ascertain whether or not the grade crossing commissioners, under those circumstances, had the power, under the grade crossing act, so called, to deny the application of the relator, and refuse to apply to the supreme court for the appointment of commissioners of appraisal to pass upon the validity and extent of her alleged claim for damages.

Section 12 of the grade crossing act, as amended, provides:

"If the commissioners shall decide that it is necessary for the purpose of carrying out any plan or modification or alteration of a plan adopted by them, or that the grade of any street or portion of any street or public ground shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation * * * the commissioners, by their chairman, may apply to a special term of the supreme court for the appointment of three commissioners, to ascertain the compensation therefor to be paid to the owners or the parties interested in the lands proposed to be taken, or which may be injured."

Under this section the commissioners are authorized to decide two questions: First, whether or not it is necessary, for the purpose of carrying out the plan adopted by them, "that the grade of any street * * * shall be changed"; second, whether or not any property may be injured by such change of grade. It would seem that the power conferred upon the commissioners to "decide" carried with it the duty to investigate, to examine, to take proof of the facts, to use their judgment, and to make the result of such investigation the basis of their decision. By the judgment in the mandamus case, which was affirmed by this court (63 App. Div. 540, 71 N. Y. Supp. 707, affirmed [court of appeals] in 169 N. Y. 605, 62 N. E. 1098), that is precisely what the commissioners were directed to do; and they have in all things, and, so far as appears, in good faith, obeyed such direction. It could not have been intended by that judgment to command the commissioners to investigate, "to hear and consider the testimony of witnesses," and then to decide in a particular way. If the decision in any event must be favorable to the relator, it would be absurd to require the commissioners to investigate,—"to hear and consider." We think the decision in the mandamus case must be regarded as decisive of the question, and compels an affirmance of the decision of the grade-crossing commissioners; it being, as we have seen, amply supported by the evidence. This determination in no manner prevents the relator from recovering the damages sustained by her, if any, because of the change of the grade in Washington street, in an action brought for that purpose. She had such right of action before the passage of the grade crossing act, and it in no manner took from her such right.

In Re Grade Crossing Com'rs, 6 App. Div. 327, 40 N. Y. Supp. 520, the court said:

"Under the law as it has existed in the city of Buffalo since 1870, at least, they are entitled to compensation when they have suffered damages

from a change of grade, and there is nothing in the grade crossing act from which we can infer that it was intended to take away any existing rights. Furthermore, after the passage of the grade crossing act, the same provisions as to compensating property owners for damages sustained by change of grade were placed in the revised charter of Buffalo (section 406, c. 105, Laws 1891). So that at the time of these proceedings the statute gave property owners a right to compensation for injury to their property sustained by change of grade."

In that case it was held that, where any portion of property was taken for the purposes of the grade crossing commissioners, the value of the part so taken, and the damages resulting from such taking, must be ascertained in the manner prescribed in the act. It was also held that, if the part of the premises not taken was damaged by the change of grade of the street, such damage must also be ascertained under the provisions of the act, and in the same proceeding instituted to ascertain the damages sustained by taking a part of the premises; that, where the provisions of the act were resorted to for the purpose of obtaining compensation for a portion of the premises taken, all the damages sustained must be ascertained in that manner, and in one proceeding. In that sense, and in no other, it was held in that case that the remedy afforded by the grade crossing act was exclusive. If the relator's property was damaged by the change in the grade of Washington street, and she had a cause of action therefor, clearly she could not be compelled to have such damages assessed by the grade crossing commissioners; and if the act, by its terms, conferred such authority, it would be violative of section 7, art. 1, of the state constitution, which provides that, "when private property shall be taken for any public use, the compensation to be made therefor * * * shall be ascertained by a jury or by not less than three commissioners appointed by a court of record," not by the legislature. Neither could she be compelled to submit to such commissioners, for final determination, the question whether or not she had sustained damage. Those questions could only be determined by a jury, or by commissioners appointed as provided by the constitution. But if we assume that the relator's property has been damaged, and that she is entitled to recover such damages, she cannot complain because of the determination of the commissioners, if made in good faith and upon proper evidence, unless the grade crossing act furnishes the exclusive means of ascertaining and recovering such damages. If it does not, then she may prosecute her claim precisely the same as before the passage of the act. If by the act a new right of action was created in favor of the relator, it was competent for the legislature to determine by what tribunal it should be adjudicated. In case the grade of Washington street at the place in question had been changed prior to the passage of the grade crossing act, a right of action would have existed therefor in favor of the relator; and it was only competent for the legislature to provide that it should be adjudicated upon by commissioners appointed as directed by the constitution, or by a jury. By the act in question it is obligatory upon the grade crossing commissioners, in case they appropriate any part of premises for the purposes of the act, to apply to the supreme court for the appointment of commissioners of appraisal; and the value

of the premises taken, the damages to the remainder because of the taking, or caused by any change in the grade of the street, must all be determined in that proceeding. In such case the act furnishes the exclusive means for the ascertainment and recovery of all damages sustained. If, however, no property is taken, the commissioners, acting in good faith, and after hearing and considering all the evidence offered, if sufficient to justify such conclusion, may determine that premises abutting upon a street of which the grade has been changed have not been damaged, refuse to apply for the appointment of commissioners of appraisal, and leave the party claiming to be damaged by such change of grade to such remedy as existed in his favor prior to the passage of the grade crossing act. In that case the remedy afforded by the act is not exclusive. The act does not require the grade crossing commissioners to make application to the 'supreme court for the appointment of commissioners to ascertain the damages which it is alleged by some owner may be done to abutting property, caused by a change in the grade of a street, which application must be based upon the sworn statement of the commissioners that, in their opinion, such property may be damaged, when, in their opinion, no damage will result.

In the mandamus case (63 App. Div., 71 N. Y. Supp., supra) it was said:

"The intention of the legislature by the act [grade crossing act] was to provide the exclusive remedy for all damages sustained, resulting from the acts of the grade crossing commissioners thereunder."

And In re Grade Crossing Com'rs, 6 App. Div., 40 N. Y. Supp., supra, is cited as authority for the proposition.

We think the language used must be construed to mean that the remedy provided by the grade crossing act is exclusive, in the sense. in which it was held to be by the authority cited (6 App. Div., 40 N. Y. Supp., supra), and not otherwise. At all events, the determination of that question was not necessary to the decision of the mandamus case. The only question there involved was whether or not the grade crossing commissioners should be compelled to hear and consider the testimony of witnesses on the question of damages sustained by the relator because of the change of the grade of Washington street, and then to determine whether they should or should not apply for the appointment of commissioners. The judgment so directed, to the end that a record of the proceedings before the commissioners should be made, in order that their determination might be reviewed by this court. If this court had been of the opinion that by the provisions of the grade crossing act it was incumbent upon the commissioners to apply to the supreme court for the appointment of commissioners of appraisal, simply because the grade of Washington street had been changed, and irrespective of whether damage had resulted or not, this court would not have directed 'such commissioners to investigate, to hear and determine, and to decide whether or not the relator had sustained damages, as was done by the affirmance of the judgment, but would have directed them to apply for the appointment of commissioners. Again, in the mandamus case the relator asked—First, that the grade crossing commis-

sioners be compelled to apply to the supreme court for the appointment of three commissioners of appraisal; and, second, that they be required to hear and consider the testimony of witnesses upon the question as to whether or not the relator's property had been damaged because of the change of the grade of Washington street. By the judgment in that case the relief first asked for was denied; the other was granted. The relator did not appeal from such judgment; the commissioners did appeal; and, as we have seen, it was in all things affirmed. As above suggested, we think that judgment is decisive of the rights of the parties to this proceeding, when, as we have seen, the decision of the grade crossing commissioners is supported by, and is not against, the weight of the evidence, which they were directed by such judgment to hear and consider, and, in effect, make the basis of their decision.

It follows that judgment should be directed affirming the decision of the grade crossing commissioners, with $50 costs and disbursements, to be paid by the relator.