in Shearman & Redfield on the Law of Negligence (5th Ed.) § 286, where it is said:

"In its proprietary or private character a municipal corporation may engage in enterprises for its own immediate profit, or advantage, as a corporation, although inuring ultimately, of course, to the benefit of the public. Of this character are waterworks to supply water to consumers. * * * In respect to its liability for negligence in the construction and maintenance of such works the corporation is on the same footing with private proprietors and is liable for the negligence of its agents in the management of its business."

To the same effect are Bailey v. Mayor, 3 Hill, 531, 38 Am. Dec. 669, Jenney v. Brooklyn, 120 N. Y. 164, 24 N. E. 274, Dunstan v. New York, 91 App. Div. 355, 86 N. Y. Supp. 562, and Gordon v. Village of Silver Creek, 127 App. Div. 888, 112 N. Y. Supp. 54, affirmed 197 N. Y. ——, 90 N. E. 1159. Numerous other citations might be given from text-books and decisions; but we think it unnecessary to further discuss that proposition.

The appellant raises no question as to the amount of damages suffered by the plaintiff, and we think the findings of the referee in that respect are supported by ample evidence.

It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

In re GRADE CROSSING COM'RS OF CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. May 4, 1910.)

1. RAILROADS (§ 99*)—CHANGE OF GRADE—COMPENSATION TO ABUTTING OWNERS—STATUTES.

Grade Crossing Act, Laws 1888, c. 345, as amended by Laws 1890, c. 255, providing for the elimination of grade crossings in the city of Buffalo, and authorizing the grade crossing commissioners to apply for the appointment of commissioners to ascertain the damages sustained to property injured thereby, does not create or give a right to compensation, but simply provides a remedy by which compensation may be ascertained.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 99.*]

2. LIMITATION OF ACTIONS (§ 19*)—LIMITATION APPLICABLE—ACTIONS AS TO REAL PROPERTY.

The right given by Buffalo City Charter, Laws 1891, c. 105, § 406, reenacting Laws 1870, c. 519, tit. 9, § 17, giving compensation to owners of property abutting on a street for damages caused by alterations in its grade, is in the nature of a grant or an easement in the street that the grade will remain unchanged, and where the grade crossing commissioners, created by Laws 1888, c. 345, as amended by Laws 1890, c. 255, lowered the grade of a street without compensation to the abutting owners, it invaded their property rights and violated the grant existing between the city and the owners, and the only way the city could destroy the easement was by adverse holding for 20 years, and the right to claim compensation was not barred by the six-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 19.*]

3. MANDAMUS (§ 95*)—ACTS OF GRADE CROSSING COMMISSIONERS.

Where the grade crossing commissioners created by Laws 1888, c. 345, as amended by Laws 1890, c. 255, authorizing the elimination of grade

crossings in the city of Buffalo, deny the right of abutting owners to compensation, the latter may by mandamus compel the commissioners to act.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 201, 204; Dec. Dig. § 95.*]

4. RAILROADS (§ 99*)—ACTS OF GRADE CROSSING COMMISSIONERS—REVIEW.

The action of the grade crossing commissioners created by Laws 1888, c. 345, as amended by Laws 1890, c. 255, providing for the elimination of grade crossings in the city of Buffalo, in denying the right of abutting owners to compensation on the abolition of grade crossings, may be reviewed by certiorari.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 99.*]

5. LIMITATION OF ACTIONS (§ 182*)—WAIVER.

Where, in proceedings by the grade crossing commissioners, created by Laws 1888, c. 345, as amended by Laws 1890, c. 255, providing for the elimination of grade crossings in the city of Buffalo for the appointment of commissioners to determine the damages to abutting property on the abolition of grade crossings, the city of Buffalo was made a party, but did not answer setting up limitations in bar to the right to recover compensation, the city waived the benefit of the running of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 680; Dec. Dig. § 182.*]

6. JUDGMENT (§ 669*)—PARTIES—BOUND BY ADJUDICATION.

In proceedings by the grade crossing commissioners, created by Laws 1888, c. 345, as amended by Laws 1890, c. 255, for the appointment of commissioners to determine damages sustained to property by the abolition of a grade crossing, the railroads, though not necessary parties, are proper parties, and, where they submit their rights to the court, they are bound by the adjudication made.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1184; Dec. Dig. § 669.*]

Appeal from Special Term, Erie County.

Application by the Grade Crossing Commissioners of the City of Buffalo for the appointment of Commissioners to ascertain the compensation to be paid to Mary A. Anderson and others for a change of grade of streets. From the report of Commissioners, and from an order confirming the report and adjudging the amount of compensation, the New York Central & Hudson River Railroad Company and others appeal. Affirmed.

The Grade Crossing Commissioners of the City of Buffalo came into being in pursuance of chapter 345 of the Laws of 1888 (as amended by chapter 255, Laws 1890) for the purpose of eliminating grade crossings where the railroads crossed the streets of the city at grade. The general plan adopted by the commissioners contemplated a subway to carry Swan and Seymour streets under certain railroad tracks. The respondents owned premises abutting on Swan street, and the plan formulated required the lowering of the grade of that street in front of their respective premises. The making of the improvement provided for was commenced in August, 1897, and completed conformably to the plan June 1, 1898.

No compensation had been paid to these abutting owners for the damages sustained by the lowering of the grade, and they severally applied to the Grade Crossing Commission in 1906 for the ascertainment and payment of these damages. In January, 1907, the Grade Crossing Commission commenced this proceeding by verified petition setting forth all the facts showing the construction of the subway, a description of the premises of the respondent owners claimed to be injured by the improvement made, and praying for the appointment of commissioners to ascertain and report the compensation to be paid to the owners by reason of the injury to their respective premises.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The appealing railroad companies were made parties defendant to the proceeding, and answered, alleging, among other things, that more than six years had elapsed since the claim for damages had accrued prior to the commencement of the proceeding. Commissioners were duly appointed to ascertain the damages, and after a hearing determined the compensation to be paid to the respondent Anderson $2,050, and to the respondent Wattles $1,825; and the report of these commissioners was confirmed by the Court at Special Term.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Ralph K. Robertson, for Grade Crossing Com'rs.

Alfred L. Becker, for New York Cent. & H. R. R. Co. and West Shore R. Co.

Henry W. Killeen, for Anderson.

Harry D. Williams, for Wattles.

SPRING, J. The amount of the awards is not questioned on this appeal. The sole claim of the appellants is that the six-year statute of limitations (section 382, subds. 2 and 3, Code Civ. Proc.) applies to the claim of each respondent, and that limitation had expired before the proceeding was commenced.

By the charter of Buffalo (Laws 1870, c. 519, tit. 9, § 17) for many years, where the city changed the grade of a street, the owner fronting thereon whose premises were damaged by the alteration was entitled to compensation, and this provision was contained in the present charter enacted in 1891 (chapter 105, § 406), and which was prior to the adoption of the plan by the grade crossing commissioners.

By section 9 of chapter 255, Laws 1890 (amended grade crossing act), it is provided that if the grade crossing commissioners decide in the development of their plan that the grade of any street "shall be changed, and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation," they "may apply to the Special Term of the Supreme Court for the appointment of three commissioners to ascertain the compensation therefor to be paid to the owners of * * * the land proposed to be taken." The mode of procedure is prescribed in this section, leaving the determination of any issues raised by the petition and answer with the court, and the only duty of the commissioners seems to be to ascertain and determine the compensation to be paid.

The provision for compensation to the owner whose land has been or is to be appropriated was enacted in view of the existing law which entitled him to recover such compensation. Matter of Grade Crossing Commissioners, 154 N. Y. 550, 49 N. E. 131. The grade crossing act did not create or give him this right. It simply provided a remedy by which the compensation could be ascertained, so that the whole scheme of the abolition of these grade crossings might be within the domain of the grade crossing commissioners, who represented the city. The commissioners were authorized to decide whether a change of grade was necessary in the carrying out of any part of their plan, either in its original scope or as modified by them; and they could change the grade however injurious to the abutting owner, but just compensation must be paid for the invasion of his property.

The respondent owners were liable to be assessed for any street benefits which the city might direct to be made, and their lots were graded, and buildings erected presumably in accordance with the existing grade lines. The authority of the city to impose assessments and regulate the grade of the street carried with it the burden of compensation in case the grade was altered to the damage of the lots. This right of the abutting owner to obtain compensation is in the nature of a grant, an easement in the street, that the grade will remain unchanged. Matter of Torge v. Village of Salamanca, 176 N. Y. 324, 68 N. E. 626. In that case Mrs. Torge, whose lot abutted on the street, claimed damages by reason of changing the street grade to an undergrade crossing. By statute (Laws 1883, c. 113, as amended) an owner whose premises adjoined a street in an incorporated village was entitled to compensation when the grade of the street was changed to the detriment of such premises. The Court of Appeals held that the lot owner was entitled to compensation, and used this language at page 331 of 176 N. Y., and page 628 of 68 N. E.:

"The right secured to an abutter to compensation for a change in the grade of a street is substantially the grant to him of an easement in the street to have it maintained at its existing grade, and any such easement created by the statute is in every respect analogous to those invaded in the elevated railroad cases."

The grade crossing commissioners caused the grade to be lowered without any compensation to the respondents. It invaded their property rights and violated the grant existing between the city and the owners. The only way the city can acquire title or destroy the easement is by occupancy, by adverse holding. That prescriptive title will not mature until 20 years have elapsed from the time the city or the grade crossing commissioners made the appropriation. Goggin v. Manhattan R. R. Co., 124 App. Div. 644, 109 N. Y. Supp. 83; Hindley v. Manhattan Co., 185 N. Y. 335, 350, et seq., 78 N. E. 276; Lewis v. N. Y. & H. R. R. Co., 162 N. Y. 202, 223, et seq., 56 N. E. 540; Muhlker v. Harlem R. R. Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872.

As already suggested, the right, so far as it pertains to compensation, is not one created by the grade crossing act. The lots fronted on the street before that act was passed. The right to have the grade maintained then existed. It is of no importance that its original source was by reason of a statute. The easement, the grant, was then subsisting.

We do not mean to limit the compensation which may be awarded in any given case to that which existed when the grade crossing act was passed. Whatever injury is sustained by the owner in the development of the plan, even though his land is not taken at all, may be within the purview of the act, and he may be "lawfully entitled" to be recompensed therefor. We are considering the statute of limitations in the light of the facts contained in this record, and not laying down any general rule to be applied where that question is not the determining one.

Nor does the six years' limitation for injury to property apply. Matter of Clark v. Water Com'rs of Amsterdam, 148 N. Y. 1, 42 N. E. 414. The grade crossing commissioners had the right to lower

the grade of the street upon the payment of compensation. Without that payment it obtained no right to the easement or grant held by the owners. They are now seeking compensation and the body which appropriated the land recognizing its appropriation has set on foot the remedy to redress the wrong and ascertain the sums which should be paid.

The Court, in 148 N. Y. 1, 8, 42 N. E. 414, 416, supra, say:

"Nor is it a proceeding to recover damages for an injury to property, as provided for in subdivision 3 of this section [Code Civ. Proc. § 382]. It is not a proceeding to recover damages for anything. The water commissioners have not injured the plaintiff's property, and he seeks to recover no damages for any injury to it within the meaning of the limitation statute. What he seeks is compensation in the shape of payment for the value of the property appropriated and taken by the city of Amsterdam, through its authorized officials, and the resulting depreciation in value of the remaining property. It all comes under the head of liability to make compensation for property taken. By statute they had a right to take such property upon payment being made, and when payment is made the title would pass, and, although the water commissioners had a right to initiate the proceedings themselves, yet, not having done so, the owner himself could, under the same statute, inaugurate them. They are proceedings in either instance to provide for compensation and obtain payment for property taken, not to recover damages simply for property injured. The section of the statute under discussion does not, therefore, apply to this case."

In the elevated railroad cases (Story v. N. Y. El. R. R. Co., 90 N. Y. 122, 43 Am. Rep. 146, Lahr v. Met. El. R. R. Co., 104 N. Y. 268, 10 N. E. 528, and many others), the city of New York owned the fee of the streets, and it was held that abutters upon the streets each had an easement tantamount to a grant and constituting property within the meaning of the Constitution, and that the construction of the elevated railroads interfering with access to the property and with the free use of light and air was inconsistent with the ordinary use of the streets, and compensation was awarded to the lot owner for this appropriation of his property.

In the improvement made by the grade crossing commissioners, the subway under the viaduct is more than a change of grade in the proper signification of that term. It is a use inconsistent with the usual and ordinary street use. The commencement of the depression for the subway was in front of these premises. The lowering of the street adjacent to these lots was small compared to the full depth of the subway, and yet, as the commissioners have found, the diminution in value was substantial, and the finding is not challenged by the appellants. The interference with the easement of these premises was for the purpose of constructing the subway which, in its entirety, is a use not contemplated for street purposes.

I think the principle held in the elevated railroad cases that the appropriation of the street was an invasion of the grant or easement of the abutting owners is applicable to the present situation.

As already noted, the present proceeding was initiated by the grade crossing commissioners. While the remedy to obtain compensation exists exclusively by the act (People ex rel. Myer v. Adam, 74 App. Div. 604, 77 N. Y. Supp. 754, and Matter of Grade Crossing Com'rs of City of Buffalo, 6 App. Div. 336, 40 N. Y. Supp. 520), yet, if they

deny the right of the claimant to compensation, he can compel them to act by mandamus (Matter of Myer v. Adam, 63 App. Div. 540, 71 N. Y. Supp. 707, affirmed 169 N. Y. 605, 62 N. E. 1098). Or their action may be reviewed by writ of certiorari. If, therefore, the grade crossing commissioners decided that the claims of the lot owners were barred by the statute of limitations, the commission was not compelled to apply for the appointment of commissioners. The claimants might then commence a proceeding to test the validity of that decision. The remedy must be operative upon the grade crossing commissioners and ultimately they must act if any relief is to be obtained. In the present case the grade crossing commissioners made the petition for the appointment of commissioners. There was no suggestion that the claims had become invalid by reason of the running of the statute of limitations. The appealing railroad companies were parties to the proceeding and answered setting up the six-year statute of limitations. The city was also made a party, but did not answer, although it has appealed.

I think the city has waived its right to the benefit of the running of the statute of limitations. Even if the commencement of the proceeding by the grade crossing commissioners is not in and of itself a waiver, the failure of the city to answer or raise the question of the statute at all must prevent it now from invoking the aid of the statute. Inasmuch as the city is primarily liable to the respondents, this conclusion would render the decision of the question heretofore discussed unnecessary, except for the fact that the final order is made on adjudication against the railroad companies. The order confirming the report of the commissioners contains this provision:

"It is further ordered that the said sums so allowed for compensation, costs, and expenses be paid by the city of Buffalo in the first instance; and that the New York Central & Hudson River Railroad Company for itself and on behalf of the West Shore Railroad Company, and the Western New York & Pennsylvania Railway Company, each repay to the said city the several proportions agreed by each of said companies to be repaid to said city in their respective contracts entered into with the Grade Crossing Commissioners of the City of Buffalo."

The railroad companies may not have been necessary parties. Apparently only the owners or those interested in the lands in some way are required to be made parties. Section 9, c. 255, Laws 1890. As a matter of practice, however, all parties interested seem in these proceedings very properly to be made parties. The railroad companies are at least proper parties, and, having submitted their rights to the court, are bound by the adjudication made. Matter of Grade Crossing Commissioners, 166 N. Y. 69, 75, et seq., 59 N. E. 706.

In view of this situation, it has seemed necessary for us to decide whether the six-year statute of limitations applies, not as affecting the respondents, but by reason of the liability of the railroad companies pursuant to their contract to repay to the city their proportion of the sums paid in compliance with the final order of confirmation.

The order should be affirmed, with costs of·this appeal to each respondent.

Order affirmed, with costs of this appeal to each respondent. All concur; ROBSON, J., in result.